**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

JOHNNY SURIEL,

Plaintiff,

v.

AT&T MOBILITY LLC,

Defendant.

Case No.:

Removed from the County Court in and for Miami-Dade County, Florida, Case No. 2020-001296-SP-24

# AT&T Mobility LLC's Notice of Removal

Defendant AT&T Mobility LLC removes this action currently pending in the County Court in and for Miami-Dade County, to the United States District Court for the Southern District of Florida, on the grounds that this Court has original jurisdiction over this civil action pursuant to 28 U.S.C. §§ 1332, 1441 and 1446.

## NATURE OF REMOVED ACTION

1) On March 30, 2024, AT&T announced that AT&T-specific data fields were contained in a data set released online approximately two weeks before. AT&T shared its determination with regulators and the public, took precautionary measures, and began notifying customers. As of March 27, 2025, over 100 related actions have been filed against AT&T and its related entities, including AT&T Mobility LLC, in connection with the incident.

2) On April 2, 2024, one of the plaintiffs moved the Judicial Panel on Multidistrict Litigation ("JPML") to consolidate pending federal court actions in multidistrict litigation ("MDL") in the Northern District of Texas. *See In re AT&T*

*Inc. Customer Data Security Breach Litigation*, JPML No. 3114, ECF No. 1 (Apr. 2, 2024). On June 5, 2024, the JPML issued a Transfer Order consolidating actions relating to the data incident on the grounds that centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary. The JPML assigned the consolidated proceeding to Judge Ada E. Brown in the Northern District of Texas and broadly noted that "any other related actions" are potential tag-along actions pursuant to the JPML Rules. *See In re AT&T Inc. Customer Data Security Breach Litigation*, JPML No. 3114, ECF No. 139 (June 5, 2024) (the "Texas MDL").

3) In May 2020, Plaintiff filed a complaint against AT&T Mobility LLC in Miami-Dade County Court bringing claims for breach of contract and violations of the Florida Deceptive and Unfair Trade Practices Act related to an administrative fee issue. In January 2021, Plaintiff amended his complaint to add claims for fraud, unjust enrichment, implied duty of good faith, pure bill of discovery and declaratory and injunctive relief related to the administrate fee issue. In August 2021, the Court granted AT&T's motion to dismiss all but Plaintiff's fraud and FDUTPA claims. In August 2024, AT&T filed a motion for reconsideration seeking dismissal of the remaining administrative fee claims. In September 2024, Plaintiff filed a motion for leave to file a Second Amended Complaint to add negligence and FDUTPA claims related to the data incident that is the subject of the Texas MDL seeking damages, attorney's fees and costs, and injunctive relief (the "Complaint"). On March 18, 2025, the Court granted AT&T's motion for reconsideration,

dismissed the remaining administrative fee claims and granted Plaintiff's motion to amend leaving only a negligence and FDUTPA claim related to the data incident at issue. Plaintiff's Complaint in the State Court Action is attached hereto as **Exhibit A**, and a true and correct copy of the state court docket and all process, pleadings, and orders served on AT&T Mobility LLC in the State Court Action is attached hereto as **Exhibit B**.

4) In addition to this case, Plaintiff's counsel has filed over 50 other complaints against AT&T Mobility LLC raising identical claims regarding the same data incident. To date, AT&T has removed 33 of these cases on similar grounds as asserted here to the Southern District of Florida[1]—Plaintiff's counsel filed motions to remand in each action. *See, e.g.*, *Caruso*, No. 1:24-cv-22597; *Surowiec*, No. 1:24-cv-22619; *Young*, No. 1:24-cv-22625; *Quick*, No. 1:24-cv-22682; *Varela*, No. 1:24-cv-22666; *Simply180*, No. 0:24-cv-61743; *Simon*, No. 0:24-cv-61737; *Braverman*, No. 1:24-cv-23685; *Van Teeffelen*, No. 1:24-cv-23776; *Bornstein*, No. 9:24-cv-81225; *Spring*, No. 1:24-cv-24061; *CHG (Heising)*, No. 1:24-cv-24065; *Stormont*, No. 1:24-cv-24943; *FFMM Services, LLC*, No. 1:24-cv-25056; *CHG (Anthony)*, No. 1:25-cv-20076; *CHG (Appleman)*, No. 1:25-cv-20086; *CHG (Bailey)*, No. 1:25-cv-20088; *CHG (Belcher)*, No. 1:25-cv-20082; *CHG (Branch)*, No. 1:25-cv-20098; *CHG (Joy)*, No. 1:25-cv-20102; *CHG (Lyons)*, No. 1:25-cv-20106; *CHG (Malloy)*, No. 1:25-cv-20114; *CHG (McAnn)*, No. 1:25-cv-20130; *CHG (Smith)*, No. 1:25-cv-20131; *CHG (Wax)*, No.

---

[1] 16 of the 33 removed cases were filed by Plaintiff Claims Holding Group, LLC ("CHG") alleging it is the assignee of claims of AT&T customers.

1:25-cv-20129; *Richards*, No. 1:25-cv-20378; *Salani*, No. 1:25-cv-20381; *CHG (Kelly)*, No. 1:25-cv-20526; *Alcantara*, No. 1:25-cv-20939; *CHG (Ankers)*, No. 1:25-cv-20934; *CHG (Galindo)*, No. 1:25-cv-20930; *CHG (Glinsky)*, No. 1:25-cv-20927; and *Regal*, No. 0:25-cv-60417.

5) AT&T removed the *Caruso*, *Young*, *Surowiec*, *Varela* and *Quick* actions in July and tagged them for inclusion in the Texas MDL. The courts in *Caruso*, *Young*, *Surowiec* and *Quick* sua sponte stayed all proceedings—including decisions on similar motions to remand filed by Plaintiff's counsel—pending a decision on transfer to the JPML. *See, e.g.*, *Surowiec*, No. 1:24-cv-22619, ECF 13 ("Defendant argues that keeping the case closed until the JPML decides the transfer issue is in the interest of judicial economy and consistency [and] Plaintiff may renew her motion to remand after such decision. . . Defendant's position is well taken."). On October 4, 2024, the JPML transferred these actions to the Texas MDL over Plaintiff's counsel's objection. *See* MDL 3114, ECF 256. In its Transfer Order, the Panel noted that "remand motions can be presented to and decided by the transferee judge." *Id.* Plaintiff's counsel has since re-filed his remand motions in the MDL Court.

6) Between September 19 and October 2, 2024, AT&T timely removed the *Simon*, *Simply180*, *Braverman*, *Van Teeffelen*, and *Bornstein* actions and tagged each for inclusion in the Texas MDL. The JPML conditionally transferred these actions to the Texas MDL on October 10, 2024. Meanwhile, the district courts in these cases stayed all proceedings pending a transfer decision by the JPML. *See,*

*e.g.*, *Bornstein*, No. 9:24-cv-81225, ECF 16 (denying motion to remand without prejudice and staying and administratively closing case pending a JPML transfer decision). On February 6, 2025, the JPML officially transferred these actions to the Texas MDL over Plaintiffs' counsel's objection. *See* MDL 3114, ECF 333.

7) On October 21, 2024, AT&T removed the *Spring* and *Heising* actions. The JPML conditionally transferred plaintiffs' claims regarding the data incident to the Texas MDL on November 26, 2024, and Plaintiff's counsel filed a motion to vacate transfer. *Id.*, ECF 312, 323. Meanwhile, the district courts presiding over these cases stayed all proceedings—including decisions on plaintiffs' motions to remand—pending a decision on transfer. *See, e.g.*, *Spring*, No. 1:24-cv-2406, ECF 17 (staying proceedings pending a Panel decision because it "increase[s] efficiency and consistency, particularly when the transferor court believes that a transfer order is likely and when the pending motions raise issues likely to be raised in other cases as well"). The JPML scheduled a hearing for March 27, 2025, to address Plaintiffs' counsel's motion to vacate transfer. *See* MDL 3114, ECF 336. AT&T expects the JPML to officially transfer these cases to the Texas MDL shortly after the hearing—exactly what occurred in *Caruso*, *Young*, *Surowiec*, *Varela*, *Quick*, *Simply180*, *Simon*, *Bornstein*, *Braverman* and *Van Teeffelen*.

8) Between December 2024 and January 2025, AT&T removed the *Stormont*, *FFNM*, *Richards*, and *Salani* actions and 11 near identical actions filed by Plaintiff CHG—*Anthony*, *Appleman*, *Bailey*, *Belcher*, *Branch*, *Joy*, *Lyons*, *Malloy*, *McAnn*, *Smith*, *Wax*—to the Southern District of Florida and tagged them for

inclusion in the Texas MDL. The district courts presiding over these actions stayed all proceedings pending a decision on transfer. *See, e.g.*, *Stormont*, No. 1:24-cv-24943, ECF 13 (staying proceedings and denying plaintiffs' motion for remand—"Since this case is a potential 'tag-along' action to an MDL matter, judicial economy and consistency concerns support a brief stay, pending a transfer decision by the JPML. . . . Should the JPML decline to consolidate this case into the MDL . . . Stormont may refile his remand motion once the case is reopened."). On February 10, 2025, the JPML conditionally transferred these actions to the Texas MDL. *See* MDL 3114, ECF 334. Plaintiff filed a motion to vacate transfer on February 23, and AT&T's response is due March 25. *See id.*, ECF 339, 344. The JPML will likely schedule a hearing without oral argument to address Plaintiffs' counsel's motion to vacate transfer. AT&T expects the JPML to officially transfer these cases to the Texas MDL shortly after the hearing—exactly what occurred in *Caruso*, *Young*, *Surowiec*, *Varela*, *Quick*, *Simply180*, *Simon*, *Bornstein*, *Braverman* and *Van Teeffelen*.

9) In February 2025, AT&T removed the *Kelly*, *Alcantara*, *Ankers*, *Galindo* and *Glinsky* actions, and tagged them for inclusion in the Texas MDL. The courts in each of these cases stayed all proceedings pending transfer. *See Galindo*, No. 1:25-cv-20930, ECF 8 ("Plaintiff will not be prejudiced by a brief stay of proceedings pending transfer, especially since Plaintiff may renew its Motion to Remand after the JPML has reached its decision."). AT&T expects the JPML to conditionally transfer each of these actions shortly.

10) On March 4, AT&T removed the *Regal* action and tagged it for inclusion in the Texas MDL. AT&T expects the JPML to also conditionally transfer this action shortly.

11) The remaining actions are cases that were initially filed by Plaintiff's counsel against AT&T in Florida state court—some as far back as 2019—for claims regarding an unrelated administrative fee issue. Plaintiff's counsel has sought leave to amend each of these cases to add claims related to the data incident that is the subject of the Texas MDL.

12) Plaintiff's claims are virtually indistinguishable from those already filed across the country against AT&T Inc. and AT&T Mobility LLC—including several brought by Florida citizens and in Florida federal courts—and consolidated for coordinated proceedings in the Northern District of Texas.

13) Indeed, there are numerous previously-filed federal cases transferred to the Texas MDL where Plaintiff is already a putative class member. For example, Plaintiff is a putative class member in cases seeking to represent "nationwide" classes of those allegedly impacted by the incident. *See e.g.*, *Garner v. AT&T Inc.*, Case No. 3:24-cv-00962 (N.D. Tex.), ECF 1 at ¶¶ 21, 52, 53, 133, 155 (negligence and FDUTPA claims brought by a Florida citizen on behalf of a nationwide putative class and a Florida subclass of individuals whose information was compromised as a result of the data incident); *Castro v. AT&T Inc.*, Case No. 24-cv-1992 (N.D. Tex.), ECF 1 at ¶¶ 13, 317 (negligence and FDUTPA claims brought by Florida citizen on

behalf of a nationwide and Florida class of all individuals "whose PII was accessed or otherwise compromised as a result of the" data incident).

14) Because Plaintiff's claims are already subsumed within putative class actions currently pending in the MDL, Plaintiff's case is removable pursuant to the Class Action Fairness Act. Moreover, because Plaintiff and AT&T Mobility LLC are completely diverse and the amount in controversy exceeds $75,000, removal is proper pursuant to 28 U.S.C. 1332(a).

## JURISDICTION UNDER CAFA

15) Pursuant to the Class Action Fairness Act ("CAFA"), where a proposed class involves 100 or more members, "[t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A) and (d)(5).

16) CAFA is designed to create "efficiencies in the judicial system by allowing overlapping and 'copycat' cases to be consolidated in a single federal court" and to place "the determination of more interstate class action lawsuits in the proper forum—the federal courts." *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 408 (6th Cir. 2008) (quoting S. Rep. No. 109-14, at 5 (2005)). Indeed, CAFA was intended to "mak[e] it harder for plaintiffs' counsel to 'game the system' by trying to defeat diversity jurisdiction." *Id.*

17) "CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). And where, as here, a plaintiff's claims are already subsumed within an existing MDL, courts have looked past artificial limitations in plaintiff's pleadings in finding federal jurisdiction.

18) For example, in *In re Kitec Plumbing Systems Products Liability Litigation*, 2010 WL 11618052 (N.D. Tex. Aug. 23, 2010), while an MDL involving allegedly defective HVAC pipe was proceeding in Texas, residents of two small communities in Washington filed actions in state court asserting the same claims. The Washington cases were removed and subsequently transferred to the MDL, where the removed plaintiffs sought to remand on the basis that CAFA's amount-in-controversy threshold was not met. Indeed, the removed plaintiffs had pled under the $5 million threshold by carving themselves out of a putative Washington class already pending before the MDL. But the *Kitec* court denied the motions to remand holding instead that it could "pierce the pleadings in order to determine the propriety of federal jurisdiction[,]" and look to the overlapping claims in the MDL class that were "already properly before this Court" in finding federal jurisdiction. *Id.* at *6.

19) The *Kitec* court further reasoned that allowing the removed plaintiffs to proceed in state court would erode the judicial efficiencies created by the MDL and undermine CAFA's aim of eliminating both gamesmanship and copycat actions.

The court found that the MDL "implicates [the] multistate or national interests" that CAFA was designed to protect and that the removed actions threatened to "create duplicative, overlapping or even identical litigation to [the MDL] if they were to be remanded." *Id.* at *7.

20) Similarly, in *Simon v. Marriott Int'l, Inc.*, 2019 WL 4573415 (D. Md. Sept. 20, 2019), plaintiffs brought claims arising out of a data breach incident in Connecticut state court despite an ongoing MDL proceeding addressing dozens of cases brought by plaintiffs nationwide regarding the same incident. To avoid diversity jurisdiction, the *Simon* plaintiffs pled that they intended to represent only a class of stateless individuals domiciled abroad. *Id.* at *1–2. But the Court found that there was "[no] legitimate basis for the need to litigate their claims separately from the MDL because of their geographic location" and to do so would mean plaintiffs "could recover from both their state court action and from the MDL." *Id.* at *4.

21) The *Simon* court further explained that "[t]he policy justifications for finding federal jurisdiction under CAFA even when it is absent on the face of the plaintiff's complaint, such as preventing inefficiency and 'ensuring federal court consideration of interstate cases of national importance,' hold even more true in the MDL context." *Id.* Indeed, "[t]he primary objective of an MDL is to promote the just and efficient conduct of actions that involve common questions of fact. This interest in fairness and efficiency is even stronger in the context of MDLs than in a stand-alone CAFA class action because MDLs combine multiple class (and individual)

actions into one lawsuit for purposes of pretrial proceedings." *Id.* Thus, "[a]llowing the Simons to manipulate CAFA would be harmful here because it could disrupt the orderly progress of the pretrial process in the Marriott MDL." *Id.*

22) A similar result was reached in *Sanders v. Kia America, Inc.*, 2023 WL 3974966 (C.D. Cal. June 13, 2023). There, California residents filed a tort action on behalf of individual plaintiffs in California state court against a California car company regarding issues with anti-theft technology. The *Sanders* plaintiffs' claims were the same as those raised in a pending MDL proceeding created to centralize all litigation for suits by consumers who purchased or leased vehicles that lacked the anti-theft technology. Plaintiffs alleged there was not minimal diversity for removal purposes because both plaintiffs and the car companies were California residents.

23) Citing *Simon*, the court disagreed, and "reach[ed] beyond the pleadings" to determine that minimal diversity existed because the *Sanders* plaintiffs were subsumed by a class in the MDL that contained non-California citizens. *Id.* at *5.

24) The *Sanders* court explained that, "[while] Plaintiffs are entitled to choose a state forum for their action by limiting the number of plaintiffs or the amount of recovery they seek[,] where there is actually no difference between th[e] action and the existing claims that are being pursued in a multidistrict litigation . . . this is exactly the type of case that CAFA envisioned as removable." *Id.* at *6.

25) This case is like *Kitec, Simon,* and *Sanders*. The incident allegedly impacted individuals nationwide and has resulted in over 100 suits raising the

same types of claims, seeking the same types of relief, and seeking to represent classes that necessarily include Plaintiff's suit. Thus, the Court has jurisdiction under CAFA.

**A. There are more than 100 putative class members.**

26) CAFA provides that the district courts shall not have jurisdiction over actions "where the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5).

27) Here, Plaintiff's claims are subsumed by cases already pending before the MDL involving identical claims for relief on behalf of more than 100 putative class members *See e.g.*, *Garner*, ECF 1 at ¶ 54 (alleging the class consists of more than 73 million individuals); *Castro*, ECF 1 at ¶ 76 (alleging the class consists of more than 100 individuals).

**B. Minimal diversity exists.**

28) Under CAFA, diversity of citizenship exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

29) Plaintiff is a citizen of the state of Florida.

30) AT&T Mobility LLC is a Delaware limited liability company.

31) "[A] limited liability company is deemed to be a citizen of any state of which any of its members is a citizen." *Blue Ridge Healthcare Mgmt., LLC v. Western World Ins. Co.*, 2020 WL 13356807, at *2 (S.D. Fla. Dec. 15, 2020).

32) AT&T Mobility LLC is a limited liability company composed of four members: BellSouth Mobile Data, Inc., New Cingular Wireless Services, Inc., SBC Long Distance, LLC, and AT&T Investment & Tower Holdings, LLC.

33) BellSouth Mobile Data, Inc. is a Georgia corporation with its principal place of business in Georgia. Thus, BellSouth Mobile Data is a citizen of Georgia.

34) New Cingular Wireless Services, Inc. is a Delaware corporation with its principal place of business in Georgia. Thus, New Cingular Wireless Services is a citizen of Delaware and Georgia.

35) SBC Long Distance, LLC is a limited liability company with one member—SBC Telecom, Inc., which is a Delaware corporation with its principal place of business in Texas. Thus, SBC Long Distance, LLC is a citizen of Delaware and Texas.

36) AT&T Investment & Tower Holdings, LLC is a limited liability company with four members—AT&T Capital Services, Inc., JVI General Partnership, SBC Portfolio Holdings, Ltd., and SBC Telecom, Inc.

37) AT&T Capital Services, Inc. is a Delaware corporation with its principal place of business in Illinois. Thus, AT&T Capital Services is a citizen of Delaware and Illinois.

38) JVI General Partnership has two partners—AT&T Wireline Holdings, LLC and AT&T Solutions Inc. For purposes of determining diversity jurisdiction, "partnerships are citizens of every state in which one of their members or partners are citizens." *Kohlmeier v. American Honda Motors Co., Inc.*, 2022 WL 4104035, at

*1 (M.D. Fla. Sept. 8, 2022). AT&T Wireline Holdings, LLC has one member—AT&T DW Holdings, Inc., a New York corporation with its principal place of business in Texas. Thus, AT&T Wireline Holdings is a citizen of New York and Texas. AT&T Solutions Inc. is a Delaware corporation with its principal place of business in Texas. Thus, AT&T Solutions is a citizen of Delaware and Texas. Therefore, JVI General Partnership is a citizen of New York, Texas, and Delaware.

39) SBC Portfolio Holdings, Ltd. is a Delaware corporation with its principal place of business in Texas. Thus, SBC Portfolio is a citizen of Delaware and Texas.

40) SBC Telecom, Inc. is a Delaware corporation with its principal place of business in Texas. Thus, SBC Telecom is a citizen of Delaware and Texas.

41) Based on the foregoing, AT&T Mobility LLC is a citizen of the states of Georgia, Delaware, Texas, New York, and Illinois.

42) Thus, there is complete diversity between Plaintiff and AT&T Mobility LLC.

**C. Amount-in-controversy is satisfied.**

43) Pursuant to CAFA, the complaint must put in controversy more than $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). The claims of individual class members are aggregated for purposes of CAFA's amount-in-controversy requirement. *See* 28 U.S.C. § 1332(d)(6).

44) The amount-in-controversy requirement is satisfied for the same reason CAFA diversity and numerosity exist in this case. Because Plaintiff's suit is

subsumed within numerous putative classes already in the MDL, the Court may look to these actions to evaluate the amount placed in controversy. *See, e.g.*, *Sanders*, 2023 WL 3974966, at *6 (aggregating claims of members in MDL class and case brought by individuals to reach CAFA amount-in-controversy); *see also Garner*, ECF 1 at ¶ 9 (MDL case subsuming Plaintiff in its class definition and alleging the amount in controversy is over $5 million); *Castro*, ECF 1 at ¶ 76 (same).

45) Because Plaintiff's case is subsumed by numerous cases already pending in the MDL, the CAFA requirements for numerosity, diversity, and amount in controversy are easily met. Thus, removal is proper.

## GROUNDS FOR REMOVAL UNDER 28 U.S.C. § 1332(a)

46) Pursuant to 28 U.S.C. 1332(a), the Court also has jurisdiction over this case because (1) there is complete diversity of citizenship between Plaintiff and AT&T Mobility LLC; and (2) the amount in controversy exceeds $75,000, exclusive of interests and costs.

### A. Complete diversity exists.

47) AT&T Mobility LLC is a citizen of the states of Georgia, Delaware, Texas, New York, and Illinois, and Plaintiff is a citizen of the state of Florida.

48) Thus, there is complete diversity between Plaintiff and AT&T Mobility LLC pursuant to 28 U.S.C. 1332(a)(1).

**B. The amount in controversy is satisfied.**

49) The amount in controversy is also satisfied here. Indeed, Plaintiff seeks at least $8,000 in damages, attorney's fees and costs, and "any other relief the Court deems just and proper."

50) An action may be removed if the defendant establishes, consistent with the pleading requirements of Civil Rule 8, that the aggregate amount in controversy, exclusive of interest and costs, exceeds $75,000. *See* 28 U.S.C. § 1332(a); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014). When a defendant seeks to remove an action to federal court on grounds of diversity jurisdiction, "the defendant's amount-in-controversy allegation should be accepted [as true] when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC*, 574 U.S. at 87. This standard is appropriate even when the complaint fails to allege, or seeks, a specific amount of damages. *See NextPlat Corp. v. Seifert*, 2023 WL 4972827, at *3–4 (S.D. Fla. June 14, 2023) (citing *Dart Cherokee* and explaining that a "removing defendant satisfies [the amount-in-controversy] requirement by claiming a sufficient sum in good faith" despite plaintiff's complaint not pleading more than $75,000 at issue).

51) Plaintiff seeks an actual damages award of $8,000. Thus, AT&T Mobility LLC need only demonstrate that Plaintiff's additional claims for relief are worth $67,000.01. ($75,000.01 – $8,000 = $67,000.01)

52) <u>Attorney's Fees</u>. In addition to $8,000 in damages, Plaintiff also requests his costs and attorneys' fees incurred litigating this case.

53) "When a statute authorizes, and a plaintiff requests, attorney's fees, a reasonable amount of those fees should be included in the amount-in-controversy." *Bele v. 21st Century Centennial Ins. Co.*, 2015 WL 3875491, at *3 (M.D. Fla. May 15, 2015). Here, Plaintiff has brought a Florida Unfair and Deceptive Practices Act claim, which expressly provides for the recovery of attorney's fees. *See* Fla. Stat. § 501.2105.

54) To determine whether the amount-in-controversy is met, the Court may consider the amount of attorney fees awarded in similar cases through trial. *See Bele*, 2015 WL 3875491, at *3 (relying on its "judicial experience and common sense" to find that the amount-in-controversy was met where an attorney fee award in comparable cases would exceed the jurisdictional minimum); *Gonzalez v. Honeywell Int'l, Inc.*, 2017 WL 164358, at *3 (M.D. Fla. Jan. 17, 2017) (same; "The Court need not pinpoint the exact dollar figure of [attorney's fees] to recognize that their value adds thousands of dollars to the amount in controversy.").

55) Attorney fee awards in comparable FDUTPA cases would be sufficient to bring the amount-in-controversy here to well over $67,000. *See, e.g.*, *Wahl Hungaria KFT v. 4G Elecs. Grp. Inc.*, 2024 WL 896263, at *1 (S.D. Fla. March 1, 2024) (awarding $79k in attorney's fees); *Unisource Discovery, Inc. v. Unisource Discovery, LLC*, 2023 WL 4188118, at *1 (S.D. Fla. June 26, 2023) (awarding over $300k in attorney's fees).

56) Plaintiff's attorney bills at a rate of $650/hour. *See Pineda v. Dale C. Glassford, P.A.*, Case No. 1:21-cv-20764, ECF 52 (S.D. Fla. August 13, 2021)

(declaration of Maury Udell in support of motion for attorney fees stating that his hourly rate is $650/hour). Thus, Plaintiff's attorney would have to bill only 104 hours to exceed the jurisdictional amount. This is significantly less than Plaintiff's counsel has previously sought in attorney's fees in prior FDUTPA cases brought against AT&T *in small claims court*. *See Greenberg v. AT&T Mobility LLC*, Case No. 2016-002810-SP-05 (Miami-Dade County Small Claims Division) (in a case seeking only $5k in damages, awarding $174k in attorney's fees based on 280 hours billed by Mr. Udell in a FDUTPA action against AT&T, as well as $15k in expert fees). And Mr. Udell has already served extensive, time-consuming discovery regarding the data incident—discovery as broad as AT&T is likely to see in the Texas MDL. For example, Mr. Udell has broadly sought **all** internal and external communications regarding any data incident for the past six years; **all** incident reports regarding any data incident over the past six years; **all** documents describing data security measures and policies for the past six years; **all** risk assessments, security audits and vulnerability assessments conducted; and **all** contract and agreements with vendors handling storage of data allegedly impacted by the incident. (Ex. B, Docket.)

57) <u>Injunctive Relief</u>. Plaintiff's request for injunctive relief may also be considered for purposes of calculating the amount in controversy. *See Hunt v. Nationstar Mortgage, LLC*, 782 F. App'x 762, 768 (11th Cir. 2019).

58) Therefore, there is complete diversity between Plaintiff and AT&T Mobility LLC, and the amount in controversy exceeds $75,000. Thus, this Court has original jurisdiction and removal is proper pursuant to 28 U.S.C. § 1332(a).

## VENUE IS PROPER

59) This Court is in the judicial district and division embracing the place where Plaintiff filed the State Court Action and where it is pending. Specifically, the United States District Court for the Southern District of Florida embraces Miami-Dade County, Florida. *See* 28 U.S.C. §§ 1441, 1446.

## TIMELINESS OF REMOVAL

60) Plaintiff's amended complaint was deemed filed and served on March 18, 2025. AT&T Mobility LLC filed this Notice less than thirty days later and removal is, therefore, timely. *See* 28 U.S.C. § 1446(b); *Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 348 (1999).

## NOTICE

As required by 28 U.S.C. § 1446(d), AT&T Mobility LLC is providing written notice of the filing of this Notice of Removal to Plaintiff and is filing a copy of this Notice of Removal with the Clerk of the County Court for Miami-Dade County, Florida.

Dated: March 28, 2025 Respectfully submitted,

By: *Yameel L. Mercado Robles*

Yameel L. Mercado Robles (1003897)
Baker & Hostetler LLP
200 South Orange Ave., Suite 2300
Orlando, FL 32801-3432
Telephone: 407.649.4000
Facsimile: 407.841.0168
ymercadorobles@bakerlaw.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2025, a true and correct copy of the foregoing document was served via email and U.S. mail upon the following:

Maury L. Udell
Beighley, Myrick, Udell, Lynne & Zeichman PA
2601 S. Bayshore Drive, Suite 770
Miami, FL 33133

*/s/Yameel L. Mercado Robles*
*Counsel for AT&T Mobility LLC*